1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONALD IVANS,

11          Plaintiff,                        No. CIV S-04-0013 MCE DAD P

12      vs.

13   DONALD NEAL, et al.,                     ORDER AND

14          Defendants.                       FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a former state prisoner proceeding pro se with a civil rights action

17   pursuant to 42 U.S.C. § 1983.  Before the court is defendant Croll's motion for summary

18   judgment, or in the alternative, summary adjudication of issues.

19   I.  Amended Complaint

20          In his amended complaint, filed on July 29, 2004, plaintiff claims that he received

21   inadequate medical care in violation of the Eighth Amendment while incarcerated at California

22   State Prison - Solano.  Plaintiff names nurse Donald Neal and supervising nurse G.E. Croll as

23   defendants.  Specifically, plaintiff alleges that he suffers from diabetes and because he is allergic

24   to regular insulin, he requires "NPH insulin" injections twice a day.  (Am. Compl. at 4.)  In 2002,

25   plaintiff experienced painful burning sensations after receiving his insulin shot.  Plaintiff believes

26   that he was having an allergic reaction caused by the contamination of the NPH insulin with

1

1    regular insulin which occurs when the same needle is used to draw both types of insulin for a

2    shot.  (Id.)  Plaintiff submitted an inmate grievance requesting that a separate vial be dedicated

3    for his injections.  (Id.)  On November 21, 2002, the appeal was granted and a special vial was

4    stored in the satellite clinic for plaintiff's sole use.  (Id. at 4-5.)  This practice continued for one

5    and a half months, however, in mid-January 2003, the medical staff began using a "contaminated

6    community bottle of NPH insulin" for plaintiff's shots.  (Id. at 5.)  Plaintiff's symptoms returned.

7    Plaintiff repeatedly complained to defendant Neal and the medical staff.  (Id.)  On February 13,

8    2003, defendant Neal told plaintiff that no one is allergic to insulin and that he could either have

9    his shot from the community bottle or no shot.  (Id. at 6.)  Plaintiff took the shot at that time.

10   (Id.)  Plaintiff filed an inmate appeal regarding this problem but defendants Neal and Croll

11   denied the appeal at the first level with the following response:

12            Results of the inquiry revealed there is no physician's order for you
              to have your personal vial of NPH insulin.  There is also no record
13            indicating you are allergic to regular insulin.  While you state that
              you have been allergic to regular insulin for over sixteen years, this
14            issue has been discussed with medical doctors who affirm that if
              you are allergic to regular insulin you would be allergic to all other
15            insulin products as well.

16   (Id. at 7.)

17            Defendant Neal also told plaintiff that there was no record of his allergy because

18   he had personally removed them from plaintiff's medical file.  (Id.)  On April 30, 2003, Chief

19   Medical Officer Dr. Thor issued the following response to plaintiff's second level appeal:

20            Results of the inquiry revealed that you did indeed have a problem
              with regular insulin and although your former claims of reactions
21            could not be documented, we are concerned enough to allow you
              your own "marked multiple dose vial of NPH insulin". . . .  There
22            were past instructions to this effect dating back to August 2002 and
              again with a previous appeal that was addressed by doctors Jason
23            Rohrer and Daniel Thor on November 15, 2002.  These
              instructions have not changed. . . .
24

25   (Id. at 10-11.)  Plaintiff finally began receiving insulin from his own vial again on May 16, 2003.

26   (Id. at 11.)

1    On August 4, 2005, the court filed findings and recommendations recommending

2  that defendant Neal be dismissed after service of process was returned unexecuted by the U.S.

3  Marshal and plaintiff failed to provide further information for service.  On September 20, 2005,

4  the findings and recommendations were adopted by the assigned District Judge.

5  II.  Defendant Croll's Motion for Summary Judgment

6    Defendant Croll contends that he was not deliberately indifferent to plaintiff's

7  medical care.  In this regard, Croll declares as follows.  He was employed at California State

8  Prison - Solano from April 1, 2003 to July 29, 2006.  (Mot. for Summ. J. (MSJ) at 3; Croll Decl.

9  at 1.)  On April 3, 2003, he was in orientation training for his new position as the Director of

10  Nursing and did not participate in any way in the response to plaintiff's first level inmate appeal.

11  (MSJ at 4; Croll Decl. at 2.)  However, he was significantly involved in responding to plaintiff's

12  second level appeal which came to his attention in late April of 2003.  In addressing that appeal

13  he consulted with Chief Medical Officer Dr. Thor, interviewed plaintiff, interviewed defendant

14  Neal and nursing staff, and prepared the written response granting plaintiff's appeal at the second

15  level.  (Id.)  After plaintiff's second level appeal was granted, defendant Croll acted to ensure

16  that the nursing staff complied with Dr. Thor's order that plaintiff receive his own bottle of NPH

17  insulin.  (Croll Decl. at 2.)  He spoke to the pharmacist and requested that plaintiff be issued

18  bottles of insulin labeled with plaintiff's name.  (Id.)  When he was told this could not be done,

19  he issued a memorandum to satellite clinic nursing staff to have plaintiff's name placed

20  conspicuously on insulin bottles that would be used only for plaintiff.  (Id.)  He also engaged in

21  extensive follow-up and spot-checking to verify that staff was complying with Dr. Thor's order.

22  (Id.)  On several occasions, he personally verified that plaintiff's NPH insulin was being properly

23  labeled and administered.  (Id.)

24    Based upon these facts, defendant Croll argues that there is no evidence

25  demonstrating that he: (1) had knowledge of any risk of injury to plaintiff; (2) deliberately

26  /////

1  ignored a risk of injury to plaintiff; or (3) had a specific intent of causing plaintiff harm.  (MSJ at

2  9.)

3  III.  <u>Plaintiff's Opposition</u>

4            On June 18, 2007, the court informed plaintiff that his filing on June 11, 2007,

5  titled "Opposition of Motion," was insufficient to oppose defendant Croll's motion for summary

6  judgment.  The court provided plaintiff with additional time to file a proper opposition to the

7  motion and advised plaintiff of what should be included therein.

8            On July 9, 2007, plaintiff filed a document styled, "Notice of Motion and Motion

9  for Summary Judgment or, in the Alternative, Summary Adjudication of Issues; Memorandum of

10  Points and Authorities."  (<u>See</u> Doc. No. 36.)  In fact, this document is not a motion but is rather

11  plaintiff's opposition to defendant Croll's pending motion and the court will construe it as such.

12  Plaintiff's opposition is difficult to decipher.  Nonetheless, it appears that plaintiff disagrees with

13  defendant Croll's assertions that Croll took steps to ensure that Dr. Thor's order with respect to

14  plaintiff's insulin was followed.  (Opp'n at 4.)  In this regard, plaintiff contends that even after

15  Dr. Thor issued his order, plaintiff had to continue to file grievances because medical staff did

16  not use a NPH insulin vial which was labeled for plaintiff's sole use.  (<u>Id.</u>)  Plaintiff attaches an

17  inmate appeal form, dated July 27, 2004, in which he contended that nurse King was not using

18  the bottle of NPH insulin that was designated for plaintiff's sole use.  (<u>Id.</u>, Ex. H.)  On September

19  24, 2004, defendant Croll granted that appeal at the first level and affirmed that plaintiff would

20  continue to have his own bottle of NPH insulin.  (<u>Id.</u>, Ex. I.)  On January 9, 2005, plaintiff

21  submitted another inmate appeal alleging that MTA Cayana was not limiting plaintiff's vial of

22  insulin for plaintiff's sole use.  (<u>Id.</u>, Ex. J.)  In response, on March 2, 2005, defendant Croll again

23  issued a memorandum to nursing staff reiterating Dr. Thor's order, and his "expectation that

24  nursing staff shall comply with this order."  (<u>Id.</u>, Ex. L.)

25            In his opposition to the pending motion for summary judgment plaintiff concedes

26  that he has "no knowledge" about whether defendant Croll was involved in the second level

1   decision granting his appeal; talked to the pharmacist in an attempt to ensure plaintiff received

2   insulin from his own bottle; or on several occasions verified that plaintiff's NPH insulin was

3   properly labeled and administered.  (Id. at 3, 5.)

4   IV.  Defendant's Reply

5          Defendant Croll contends that plaintiff's opposition is "confusing, incoherent,

6   unintelligible and procedurally deficient" and should be stricken.  (Reply at 1-2.)  He also argues

7   that plaintiff's opposition failed to comply with the court's June 18, 2007 order, that the exhibits

8   attached to the opposition were not produced in response to defendant's discovery and should

9   therefore be stricken and disregarded, and that the exhibits contain inadmissible hearsay and lack

10  foundation.  (Id. at 2-3.)  Defendant Croll asserts that it is now clear that plaintiff's claim against

11  him is based solely on respondeat superior theory and is not actionable.  Finally, he argues that

12  plaintiff's opposition to the motion for summary judgment is unsupported by admissible

13  evidence and that plaintiff has failed to raise a genuine issue of material fact.  (Id. at 4-5.)

14  Defendant Croll concludes that he is entitled to the granting of summary judgment in his favor.

15  V.  Summary Judgment Standards Under Rule 56

16          Summary judgment is appropriate when it is demonstrated that there exists "no

17  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

18  matter of law."  Fed. R. Civ. P. 56(c).

19          Under summary judgment practice, the moving party

20          always bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
21          pleadings, depositions, answers to interrogatories, and admissions
            on file, together with the affidavits, if any," which it believes
22          demonstrate the absence of a genuine issue of material fact.

23  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

24  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

25  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

26  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

1    after adequate time for discovery and upon motion, against a party who fails to make a showing

2    sufficient to establish the existence of an element essential to that party's case, and on which that

3    party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

4    concerning an essential element of the nonmoving party's case necessarily renders all other facts

5    immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

6    whatever is before the district court demonstrates that the standard for entry of summary

7    judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

8          If the moving party meets its initial responsibility, the burden then shifts to the

9    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

10   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

11   establish the existence of this factual dispute, the opposing party may not rely upon the

12   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

13   form of affidavits, and/or admissible discovery material, in support of its contention that the

14   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

15   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

16   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

17   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

18   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

19   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

20   1436 (9th Cir. 1987).

21         In the endeavor to establish the existence of a factual dispute, the opposing party

22   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

23   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

25   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

26   /////

1   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

2   committee's note on 1963 amendments).

3           In resolving the summary judgment motion, the court examines the pleadings,

4   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

6   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

7   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

8   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

9   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

10  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

11  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

12  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

13  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

14  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

15          On summary judgment the court is not to weigh the evidence or determine the

16  truth of the matters asserted but must only determine whether there is a genuine issue

17  appropriately resolved by trial.  Summers v. A. Teichert & Son. Inc., 127 F.3d 1150, 1152 (9th

18  Cir. 1997).  Nonetheless, in order for any factual dispute to be genuine, there must be enough

19  doubt for a reasonable trier of fact to find for plaintiff in order to defeat defendants' summary

20  judgment motion.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

21          On November 12, 2004, the court advised plaintiff of the requirements for

22  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

23  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

24  Cir. 1988).

25  /////

26  /////

VI.  <u>Analysis</u>

        Here, plaintiff has failed to establish the existence of an essential element of his

Eighth Amendment claim upon which he would bear the burden at trial.  <u>See</u> <u>Celotex Corp.</u> 477

U.S. at 322.  In support of his claim alleging that he received inadequate medical care, plaintiff

must establish that defendant Croll was deliberately indifferent to a serious medical condition

from which plaintiff suffered.  The Ninth Circuit has recently explained the applicable legal

standard governing such a claim, as follows:

> Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim
> based on prison medical treatment, an inmate must show
> "deliberate indifference to serious medical needs."  <u>Estelle v.</u>
> <u>Gamble</u>, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).
> In the Ninth Circuit, the test for deliberate indifference consists of
> two parts.  <u>McGuckin v. Smith</u>, 974 F.2d 1050 (9th Cir. 1991),
> <u>overruled on other grounds by</u> <u>WMX Techs., Inc. v. Miller</u>, 104
> F.3d 1133 (9th Cir. 1997) (en banc).  First, the plaintiff must show
> a "serious medical need" by demonstrating that "failure to treat a
> prisoner's condition could result in further significant injury or the
> 'unnecessary and wanton infliction of pain.'"  <u>Id.</u> at 1059 (citing
> <u>Estelle</u>, 429 U.S. at 104, 97 S. Ct. 285).  Second, the plaintiff must
> show the defendant's response to the need was deliberately
> indifferent.  <u>Id.</u> at 1060.  This second prong - defendant's response
> to the need was deliberately indifferent - is satisfied by showing (a)
> a purposeful act or failure to respond to a prisoner's pain or
> possible medical need and (b) harm caused by the indifference.  <u>Id.</u>
> Indifference "may appear when prison officials deny, delay, or
> intentionally interfere with medical treatment, or it may be shown
> by the way in which prison physicians provide medical care."  <u>Id.</u>
> at 1059 (quoting <u>Hutchinson v. United States</u>, 838 F.2d 390, 392
> (9th Cir. 1988).  Yet, an "inadvertent [or negligent] failure to
> provide adequate medical care" alone does not state a claim under
> § 1983.  <u>Id.</u> (citing <u>Estelle</u>, 429 U.S. at 105, 97 S. Ct. 285).  A
> prisoner need not show his harm was substantial; however, such
> would provide additional support for the inmate's claim that the
> defendant was deliberately indifferent to his needs.  <u>Id.</u> at 1060.  If
> the harm is an "isolated exception" to the defendant's "overall
> treatment of the prisoner [it] ordinarily militates against a finding
> of deliberate indifference."  <u>Id.</u> (citations omitted).

<u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006).

        In this case, plaintiff has presented no evidence that defendant Croll was

deliberately indifferent about plaintiff's insulin allergy or the proper administration of plaintiff's

1   NPH insulin shots.  The undisputed evidence before the court establishes that defendant Croll

2   drafted the decision signed by Dr. Thor which concluded that, although plaintiff's allergy was not

3   documented, there was a legitimate concern regarding plaintiff's potential allergic reaction.

4   Pursuant to that decision, procedures were developed at CSP - Solano to provide plaintiff with

5   his own vial of NPH insulin.  There is also no dispute that defendant took steps to verify that

6   those procedures were being followed.

7         Plaintiff has attached to his opposition inmate appeals indicating that even after

8   Dr. Thor's order of April 30, 2003, certain medical staff at CSP - Solano continued to fail to

9   comply with that directive.  As defendant Croll has argued, however, supervisory personnel are

10  generally not liable pursuant to § 1983 for the actions of their employees under a theory of

11  respondeat superior.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

12  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Here, plaintiff has not responded to defendant

13  Croll's showing by providing any evidence suggesting that defendant Croll was aware of staff

14  who were ignoring Dr. Thor's order and failed to take corrective action.  In fact, the evidence

15  before the court establishes that the opposite is true.  Defendant Croll granted plaintiff's inmate

16  appeal and in a memorandum to the nursing staff, dated March 2, 2005, Croll wrote:

17            This is a reminder that Inmate Donald Ivans, CDC P-84658 has a
              physician's order to have his own separate bottle of NPH Insulin.
18            It is my expectation that nursing staff shall comply with this order.
              This insulin will be marked with his name on it and kept separate
19            in its original small box.  It will be removed from the box only in
              the front of I/M Ivans.  After his injection, the bottle will be
20            immediately placed back in this box with no exception.  If for any
              reason he believes the Insulin bottle was contaminated, he will
21            have his insulin bottle replaced and the following procedure will
              start over.  The above procedure will be strictly adhered to.
22

23  (Opp'n, Ex. L at 1.)

24        The evidence before this court reflects that each time defendant Croll became

25  aware of a problem with the administering of plaintiff's insulin he took corrective action in an

26  attempt to solve the problem.  There is no evidence that defendant was deliberately indifferent to

1   any insulin allergy from which plaintiff suffered.  Therefore, defendant Croll's motion for

2   summary judgment should be granted.

3                                                    CONCLUSION

4              Accordingly,  IT IS HEREBY ORDERED that the court deems plaintiff's July 9,

5   2007 "Notice of Motion and Motion for Summary Judgment or, in the Alternative, Summary

6   Adjudication of Issues; Memorandum of Points and Authorities" (Doc. No. 36.) as plaintiff's

7   opposition to defendants' March 16, 2007 motion for summary judgment.

8              Also, IT IS HEREBY RECOMMENDED that:

9              1.  Defendant Croll's March 16, 2007 motion for summary judgment be granted;

10  and

11             2.  This action be dismissed.

12             These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within ten days after service of the objections.  The parties are advised

18  that failure to file objections within the specified time may waive the right to appeal the District

19  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED: December 14, 2007.

21

22

23             _____
               DALE A. DROZD
               UNITED STATES MAGISTRATE JUDGE

24  DAD:4
    ivan0013.57

25

26

                                                    10